IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| PENNY NEWSOME, | : |
| Plaintiff, | : |
| v. | : Case No. 7:08-CV-8 (HL) |
| TODD A. HIGHAM, and SHERIFF CHARLES NICK NORTON, | : |
| Defendant. | : |

## ORDER

This matter is before the Court on the Motion for Summary Judgment (Doc. 30) (the "Motion") filed by Defendant Sheriff Charles Nick Norton. For the following reasons, the Motion is granted in part, and denied in part.

### I. STATEMENT OF FACTS

On February 13, 2007, the Plaintiff, Penny Newsome, was arrested in Lanier County for violation of her probation. At the time, the Lanier County Sheriff's Department (the "LCSD") did not operate its own jail, so it had to transport arrestees to jails in surrounding counties for booking, fingerprinting and processing, and then transport the arrestees back to Lanier County for incarceration. Defendant Todd Higham was hired by the LCSD as a prison transport officer to transport arrestees to the Lowndes County jail for processing, among his other duties.

On the day following the Plaintiff's arrest, the day she was to be transported to Lowndes County for processing, Higham had been employed by the LCSD for about eight months.[1] Higham had yet to begin his Peace Officer Standards and Training (POST) certification training and, in fact, had received very little training of any other kind. Georgia law allows persons employed as jail officials six months from their initial date of hire to complete their POST certification course. O.C.G.A. § 35-8-24(b). If after six months an individual employed as a jail official has not been POST certified, he is "prohibited from working as a jail officer in a jail facility . . ." Id. On February 14, Higham was neither POST certified nor a sworn officer.[2] Therefore, under Georgia law, Higham was prohibited from transporting the Plaintiff to Lowndes County.

En route to the Lowndes County jail, Higham removed the Plaintiff's handcuffs and allowed her to smoke cigarettes. Higham informed the Plaintiff that he was involved in the production of pornographic material and asked if she or any of her friends would be interested in participating. When the Plaintiff arrived at the Lowndes County jail, she did not report this conversation to anyone.

---

[1] The exact date of Higham's hire is uncertain. He was officially hired sometime in June 2006, but had been participating in "ride-alongs" with officers of the LCSD since May 2006.

[2] Higham was enrolled in a future POST certification course.

On the return trip, Higham was transporting the Plaintiff and another arrestee, whom Higham was to take to Berrien County. During this trip, Higham allowed the Plaintiff to ride in the front seat. With the other arrestee in the back seat, Higham began to make comments about the Plaintiff's breasts. He continued to make lewd comments and spoke about his pornography until they reached the Berrien County jail, where the other prisoner was left.

After leaving the sally port at the Berrien County jail, Higham reached over and grabbed the Plaintiff's breasts. He continued to make comments about the Plaintiff and to describe to her sexual activities he wished to engage in with her.

Higham made three unauthorized stops before arriving at the Lanier County jail. The first stop, which was at a convenience store, was for the purpose of allowing the Plaintiff to use the bathroom. The purpose of the second stop was to allow the Plaintiff to pick up clothes from a friend, clothes that she could wear while in jail. The final stop, also at a convenience store, was to allow the Plaintiff to change into her new clothes.

At the third stop, Higham accompanied the Plaintiff into the store and stood next to the bathroom doors while the Plaintiff went into the women's bathroom to change. While she was changing, Higham knocked on the door and asked if she was okay. The Plaintiff answered that she

was. Shortly thereafter Higham knocked again, forced the door open and entered the bathroom. As he entered the bathroom, the Plaintiff did not have her shirt on and bent over to pick it up to cover herself. Higham "already had [his penis] in his hands . . ." (Newsome Depo. 33.) Higham grabbed the Plaintiff by the head and forced her to perform fellatio on him. When Higham was finished, the Plaintiff cleaned herself off, threw away some of her now soiled clothes and returned to the car with Higham.

When the Plaintiff finally reached the Lanier County jail and Higham had left, the Plaintiff reported the sexual assault to the officers there. She was later questioned by GBI Agent Steinberg, who then contacted Sheriff Norton to inform him of Higham's actions. Agent Steinberg asked Norton to assist in apprehending Higham by sending Higham back to Lanier County under false pretenses. Norton instructed Higham to return to the Lanier County jail immediately in order to transport an inmate to the hospital. When Higham reached the Lanier County jail he was arrested. Norton thereafter terminated Higham's employment. Higham eventually plead guilty to sexual assault.

The Plaintiff brought this action against Higham, Sheriff Norton and the LCSD. Higham did not respond to the lawsuit and on March 19, 2008, the clerk of court entered default against Higham (Doc. 15). The LCSD was dismissed from the lawsuit by Order (Doc. 23) of this Court dated May

4

21, 2008. Sheriff Norton now files this Motion asking the Court to grant him summary judgment.

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). In ruling on a defendant's motion for summary judgment, the Court takes the facts in the light most favorable to the plaintiff. Stanley v. City of Dalton, 219 F.3d 1280, 1287 (11th Cir. 2000). The Court may not, however, make credibility determinations or weigh the evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986).

### B.   Eighth Amendment Applies

The parties to this Motion both state, and this Court agrees, that the Plaintiff's claims should be analyzed under the Eighth Amendment because her incarceration was post-conviction, as she was arrested for violating her probation. See Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 n. 6 (11th Cir. 1997).

*1.   Claims against Sheriff Norton in his official capacity*

Sheriff Norton is immune from suit in his official capacity as Sheriff of Lanier County. "The Eleventh amendment protects a state from being

5

sued in federal court without the state's consent." Manders v. Lee, 338 F.3d 1304, 1308.  The Eleventh Amendment also protects those acting as arms of the state.  Id.  The Eleventh Circuit has recognized that a sheriff is an arm of the state when administering the jail because his "authority and duty to administer the jail in his jurisdiction flows from the State, not [the c]ounty."  Id. at 1315, 1323.  See also In re Irvin, 254 Ga. 251, 253, 328 S.E.2d 215, 217 (1985) ("It is clear that the legislature has vested broad authority in the office of sheriff to administer the jails.").  Therefore, Sheriff Norton is immune from official liability for incidents arising, like this case, out of his operation of the jail.  The Court grants summary judgment to Sheriff Norton on all of the Plaintiff's federal claims against Sheriff Norton in his official capacity.

2.    *Claims against Sheriff Norton in his individual capacity*

a.    Failure to protect

While Sheriff Norton may be immune to suit in his official capacity, he still may be liable in his individual capacity.

The Eighth Amendment prohibits cruel and unusual punishment.  It is a basic tenet of law that prison or jail officials violate the Eighth Amendment when they are deliberately indifferent to a substantial risk of serious harm to inmates.  Marsh v. Butler County, Ala., 268 F.3d 1024, 1027 (11th Cir. 2001).  As noted by the Tenth Circuit, an "inmate has a constitutional right to be secure in her bodily integrity and free from attack

6

by prison guards." Hovater v. Robinson, 1 F.3d 1063, 1068 (10th Cir. 1993).

To show an Eighth Amendment violation by Sheriff Norton, the Plaintiff must show certain objective and subjective elements. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994). For the objective element, a plaintiff must show that an objectively substantial risk of serious harm existed; and once it is shown that an official is aware of this objectively substantial risk, the official must respond to this risk in an objectively reasonable manner. See Marsh, 268 F.3d at 1028-29. As for the subjective element, "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979.

"[T]o show an Eighth Amendment constitutional violation, the summary judgment evidence, viewed in the light most favorable to Plaintiff, must show (i) facts presenting an objectively substantial risk to inmates and awareness of these facts on the part of the officials charged with deliberate indifference; (ii) that the officials drew the subjective inference from known facts that a substantial risk of serious harm existed; and (iii) that the officials responded in an objectively unreasonable manner." Doe. V. Georgia Dep't of Corrs., 248 Fed.Appx. 67, 70 (11th Cir. 2007) (unpublished).

First, the Plaintiff has produced evidence by which a jury could conclude that there was an objectively substantial risk to the inmates and that Sheriff Norton was objectively aware of it. Georgia law requires that all jail officials must complete the POST certification course within six months from the date of hire. Clearly, Georgia law recognizes that there is a risk in having untrained prison officials put in charge of inmates. The need for training is so great, in fact, that if a prison official fails to complete such the POST course within six months, that official is prohibited from working as a prison official. It is because of this law that Defendant Higham was legally prohibited from working as a prison officer. Additionally, not only had he not been POST certified, but the Plaintiff has shown that Defendant Higham received very little training.

Next, a jury could conclude that Sheriff Norton drew the subjective inference from known facts that there was a substantial risk of serious harm (e.g., sexual assault) to female inmates. Importantly, for this element, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . ., and a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer v. Brennan, 511 U.S. 825, 842, 114 S.Ct. 1970, 1981 (1994). Based on deposition testimony, Sheriff Norton knew that POST training was required, and he knew that Higham

8

had not completed the POST course.  It is safe to conclude that a jury might find that Norton subjectively knew that there was a substantial risk of harm to female inmates in allowing an untrained, uncertified and unsworn male prison official to transport them over long, secluded rural roads between jails.

Finally, a jury could conclude, based on the evidence offered, that Norton acted in an objectively unreasonable manner.  Despite his knowledge that Higham was not POST certified and was therefore ineligible to serve as a sworn officer, Norton allowed Higham to act as a prison official.  Of course, Sheriff Norton could argue that, while there was a rather obvious risk of allowing Higham to transport female arrestees between jails, the natural outcome of that scenario was not necessarily sexual assault.  Therefore, while the risk was real, Norton's actions were still reasonable.  However, the fact of the matter is that if Norton had prohibited Higham from working as a prison official, then Higham would not have been in the position to sexually assault the Plaintiff on February 14, 2007.

Considering the above, the Plaintiff has satisfied her burden with respect to her Eighth Amendment claim.  The Court denies summary judgment on this claim.

b.    Failure to Train

A similar, but not identical, issue to the one above is whether Sheriff Norton can be held liable in his individual capacity for a failure to train. By now, it is axiomatic that sheriffs, as supervisory officials, are not liable for the unconstitutional acts of their subordinates on a theory of respondeat superior liability. Gray v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006). Absent the personal involvement by the sheriff in the allegedly unconstitutional act, of which there is no allegation here, such a supervisor may only be held liable if there is a causal connection between his actions and the constitutional violation. Id. Such a casual connection, in some limited circumstances, can be the result of a supervisor's failure to adequately train the subordinate. Gold v. City of Miami, 151 F.3d 1346, 1350 (1998).

A supervisory official is not liable under § 1983 for an injury resulting from his failure to train subordinates unless "his failure to train amounts to deliberate indifference to the rights of person with whom the subordinates come into contact" and the failure has actually caused the injury about which the plaintiff complains. Popham v. City of Talladega, 908 F.2d 1561, 1564-65 (11th Cir. 1990). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a [sheriff] be liable for" the unconstitutional acts of his subordinates. Gold, 151 F.3d at 1350. "To establish a 'deliberate or conscious choice' or such 'deliberate indifference,' a plaintiff must present some evidence that the municipality

10

knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Id.

In the many of the failure to train cases, the issue is whether police officers who have already been trained received training that was somehow deficient because it failed to instruct on how to deal with a specialized area of the law, and in most cases the failure to train claim fails. But in this case, there is no allegation that a specific aspect of Higham's training was insufficient because Higham received no training at all. In Boyd v. Nichols, 616 F.Supp.2d 1331 (M.D. Ga. 2009), a case with facts similar to this case, but involving deputy who had received training, this Court stated that it "was not a situation where a male jailer received no training at all. If that were the case, it might be a closer call as to whether additional training was required." Boyd, 616 F.Supp.2d at 1342. Indeed, such a situation has arisen, and it is a much closer call.

Examining the facts in light of the standard set out above, the jury could conclude that Sheriff Norton was deliberately indifferent in failing to train Higham. The fact that Georgia law requires POST training for all prison officials, and that prison officials who fail to complete POST training within six months of hire are prohibited from working as prison officials, shows that there is an obvious need to train prison officials. Norton therefore made the deliberate choice not to train Higham, and to allow

11

Higham to serve as a prison official despite the fact that Higham was prohibited by statute from so serving.

Moreover, there is a causal connection between Norton's failure to train and Higham's sexual assault of the Plaintiff. Norton has argued the contrary, stating that there is no evidence "that being P.O.S.T. certified would necessarily have prevented a male employee of a sheriff's department from engaging in sexual contact with a female detainee." While this may or may not be the case, what is true is that if Sheriff Norton had followed Georgia law and refused to allow Higham to serve as a prison official due to his lack of training, Higham would not have had the opportunity to abuse his position by sexually assaulting the Plaintiff.

Sheriff Norton's failure to train Higham was the result of deliberate indifference, therefore, he is not entitled to summary judgment on the Plaintiff's claim for failure to train.

## C. State Law Claims

To the extent that the Plaintiff has asserted state law tort claims against Sheriff Norton, Norton has asked for summary judgment in his favor. This Court grants summary judgment on claims against Norton in his official capacity, but denies summary judgment against Norton in his personal capacity.

1. *Official capacity claims*

"[T]he county sheriff in his official capacity is immune from tort liability in performing an official function and may be liable only to the extent that the county ha[s] waived sovereign immunity by statute." Howard v. City of Columbus, 239 Ga. App. 399, 410, 521 S.E.2d 51, 66 (1999).  There is no indication in the record that Lanier County has waived its sovereign immunity.  Therefore, Sheriff Norton is entitled to sovereign immunity in his official capacity; summary judgment is granted as to the Plaintiff's state law official capacity claims.

2. *Personal capacity claims*

A sheriff in his personal capacity can be held liable for negligently performing a ministerial act, but not a discretionary act; to hold a sheriff liable for a discretionary act a plaintiff must show that such an act was performed with willfulness, malice or corruption.  Lowe v. Jones County, 231 Ga. App. 372, 373, 499 S.E.2d 348, 350 (1998).  Sheriff Norton points out, correctly enough, that under Georgia law "[t]he operation of a police department, including the degree of training . . . to be provided its officers, is a discretionary government function."  Id.  However, it is not the *degree* of training that is at issue here.  Rather, the issue involves the fact that Higham was never trained in the first place and, as a result, Georgia law prohibited him from working as a prison transport officer.  Such a decision on Norton's part, that is, allowing to work an individual who is prohibited by law from working cannot be said to be a discretionary function.  It is a

13

ministerial act, that is, "one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." <u>Middlebrooks v. Bibb County</u>, 261 Ga. App. 382, 385, 582 S.E.2d 539, 543 (2003). Performing such a duty negligently will expose Norton to liability. Thus, the question of whether Norton negligently performed his ministerial duty is one that a jury should decide. Therefore, summary judgment is denied for the Plaintiff's state law personal capacity claims.

### III. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment (Doc. 30) is granted in part, and denied in part. The Motion is granted as to all federal and state claims against Sheriff Norton in his official capacity. The Motion is denied as to all federal and state claims against Sheriff Norton in his personal capacity.

**SO ORDERED**, this the 29th day of March, 2010.

*s/ Hugh Lawson*
HUGH LAWSON, Senior Judge

jch